**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **FAWAD SULTANI ALI**, )<br>    Karte-Seh, St. 4, House #233 District #6 )<br>    Kabul, Afghanistan )<br>    )<br>    **Plaintiff,** )<br>    )<br>    v. )<br>    )<br>**MICHAEL R. POMPEO**, in his official capacity )<br>As Secretary of State; )<br>    The Executive Office )<br>    Office of the Legal Adviser )<br>    Suite 5.600 )<br>    600 19th St. NW )<br>    Washington, D.C. 20522 )<br>    )<br>**KEVIN K. MCALEENAN**, in his official )<br>capacity as Secretary of Homeland Security; )<br>    Office of the General Counsel )<br>    United States Department of )<br>    Homeland Security )<br>    245 Murray Lane SW )<br>    Mail Stop 0485 )<br>    Washington, D.C. 20528 )<br>    )<br>**UNITED STATES CONSULATE GENERAL** )<br>**KABUL AFGHANISTAN** )<br>    The Executive Office )<br>    Office of the Legal Adviser )<br>    Suite 5.600 )<br>    600 19th St. NW )<br>    Washington, D.C. 20522 )<br>    )<br>**UNITED STATES EMBASSY KABUL** )<br>    The Executive Office )<br>    Office of the Legal Adviser )<br>    Suite 5.600 )<br>    60 19th St. NW )<br>    Washington, D.C. 20522 ) | Case No.: 19-3108<br><br><br><br><br>**COMPLAINT FOR WRIT OF**<br>**MANDAMUS AND INJUNCTIVE**<br>**RELIEF** |

| | |
|---|---|
| **DEREK N. BRENNER, in his official capacity** | ) |
| **as Acting Executive Associate Director of HIS;** | ) |
| Office of the General Counsel | ) |
| United States Department of | ) |
| Homeland Security | ) |
| 245 Murray Lane SW | ) |
| Mail Stop 0485 | ) |
| Washington, D.C. 20528 | ) |
| | ) |
| **MATTHEW D. EMRICH, in his official** | ) |
| **capacity as Associate Director of USCIS's Fraud** | ) |
| **Detection and National Security Directorate;** | ) |
| Office of the General Counsel | ) |
| United States Department of | ) |
| Homeland Security | ) |
| 245 Murray Lane SW | ) |
| Mail Stop 0485 | ) |
| Washington, D.C. 20528 | ) |
| | ) |
| **CHRISTOPHER A. WRAY, in his official** | ) |
| **capacity as Director of the FBI,** | ) |
| Attorney General | ) |
| U.S. Department of Justice | ) |
| 950 Pennsylvania Ave NW | ) |
| Washington, D.C. 20530-0001 | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## COMPLAINT FOR WRIT OF MANDAMUS AND INJUNCTIVE RELIEF

COMES NOW Plaintiff Fawad Sultani Ali ("Plaintiff" or "Mr. Sultani"), by and through undersigned counsel, for his Complaint for Writ of Mandamus and Injunctive Relief to compel Defendants ("Defendants") to issue Plaintiff's visa. In support thereof, Plaintiff alleges as follows:

## INTRODUCTION

1. The Plaintiff seeks to compel the Defendants to complete "administrative processing" and issue an EB-5 visa to Plaintiff. Plaintiff's Form I-526, Immigrant Petition by Alien Entrepreneur was approved by U.S. Citizenship and Immigration Services ("USCIS") on

February 9, 2017. Plaintiff has yet to receive a decision on his pending visa, despite multiple inquiries over the past two years. The Plaintiff is eligible for the visa sought, as can be evidence by the approval of Plaintiff's Form I-526. A two year and continuing delay without justification for final adjudication is an unreasonable delay resulting in arbitrary and capricious action by Defendants.  The Defendants' delays in adjudicating the Plaintiff's visa are unreasonable, unexplained, and have and will continue to cause irreparable injury to Plaintiff.  The Plaintiff requests that the Court order the Defendants to promptly complete all investigations and outstanding administrative processing and adjudicate his visa without further delay.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 8 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (jurisdiction over actions for mandamus), and 28 U.S.C. §1651 (all writs act). Jurisdiction is also conferred by 5 U.S.C. § 555(b) and § 704, the Administrative Procedure Act (APA).

3. Under 28 U.S.C § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." Furthermore, the Plaintiff is challenging the Defendants' authority to refuse to adjudicate Plaintiff's EB-5 visa petition and is not challenging a decision within the discretion of the Department of State, a U.S. Embassy, or a U.S. Consulate. Therefore, jurisdiction exists for this Court to consider whether the Defendants have authority to withhold adjudication of the visa application. *See Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997); *Raduga USA Corp v. United States Dep't of State,* 440 F. Supp. 2d 1140, 1149 (S.D. Cal. 2005) (finding mandamus jurisdiction where "Plaintiffs

simply seek to compel the consulate to render a final decision on the Plaintiff's . . . visa applications").

4. The APA requires the Defendants to carry out their duties within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." The Defendants are subject to 5 U.S.C. § 555(b). *See Patel*, 134 F.3d at 931-32 ("Normally a consular officer's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the counsel to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exits.") (internal citations omitted); *Raduga*, 440 F.Supp. 2d at 1146 ("[T]he Court finds that Plaintiffs have sufficiently demonstrated Article III standing to bring this APA mandamus action."). As set forth below, the delay in processing the Plaintiff's visa applications is unreasonable.

5. The Defendants have a mandatory and affirmative duty to adjudicate a properly filed immigrant visa petition and application, where the underlying petition has been approved by USCIS and forwarded to the appropriate overseas consulate. 22 C.F.R. § 41.121 (a) ("refusals must be based on legal grounds").

6. Venue in the District of Columbia is appropriate under 28 U.S.C. § 1391(b) and (e) as this is an action against the United States, its officers, and its employees and substantial part of the events giving rise to the instant claim occurred in this district. Defendants are officers of the United States sued in their official capacity who work in the District of Columbia.

## PARTIES

7. Plaintiff, Fawad Sultani Ali, is a citizen of Afghanistan who resides in Kabul, Afghanistan. Plaintiff is the Petitioner on a Form I-526, Immigrant Petition by Alien Entrepreneur approved by USCIS on February 9, 2017. He has satisfied all conditions for approval of the petition filed on his behalf and for issuance of the immigrant visa for which he applied for. His EB-5 visa has been held in administrative process for over 19 months.

8. Defendant the Honorable Mike Pompeo is sued in his official capacity as Secretary of the United States Department of State ("DOS"). The DOS, through the National Visa Center ("NVC") and local consular offices, is responsible for the issuance of immigrant and nonimmigrant visas abroad.

9. Defendant the Honorable Kevin K. McAleenan is sued in his official capacity as the Acting Secretary of the United States Department of Homeland Security ("DHS"). DHS is a cabinet department of the United States federal government responsible for immigration-related services (U.S. Citizenship and Immigration Services or "USCIS"), enforcement (Immigration and Customs Enforcement or "ICE"), and investigations (Homeland Security Investigations or "HIS"), among other duties. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefits applications. As Acting Secretary, Mr. McAleenan is responsible for the administration and enforcement of the immigration laws of the United States. The USCIS is a component of DHS, charged with processing immigrant visa petitions.

10. United States Consulate General Afghanistan is a consular agency of the Department of State and is responsible for overseeing the adjudication and issuance of visas to the United States to individuals present in Afghanistan.

11. United States Embassy Kabul is an embassy and consular agency of the Department of State and is responsible for overseeing the adjudication and issuance of immigrant visas to individuals present in Kabul, Afghanistan.

12. Defendant Derek N. Brenner is the Acting Executive Associate Director of HSI. HSI is an agency of the DHS, and is responsible for national security investigations on behalf of DHS in coordination with the National Counterterrorism Center. HIS is one of the agencies that provides data for background checks to DHS, which is then reported to DOS. Defendant Brenner has supervisory responsibility over HIS. Plaintiff sues Defendant Brenner in his official capacity.

13. Defendant Matthew D. Emrich is the Associate Director of USCIS's Fraud Detection and National Security ("FDNS") Directorate, which works to determine whether an individual or organization filing for immigration benefits poses a threat to national security, public safety, or the integrity of the nation's legal immigration system. FDNS agents are placed both within USCIS and in other agencies, including DOS and HIS. Defendant Emrich has a supervisory responsibility over FDNS. Plaintiff sues Defendant Emrich in his official capacity.

14. Defendant Christopher A. Wray is the Director of the Federal Bureau of Investigations ("FBI"). The FBI is a national security organization with intelligence and law enforcement responsibilities. It is responsible for background checks, including name checks requested by other agencies including HIS, FDNS, USCIS, and DOS. Defendant Wray has a supervisory responsibility over the FBI. Plaintiff sues Defendant Wray in his official capacity.

## STATUTORY FRAMEWORK

15. Through passage of the Immigration Act of 1990, Congress created the USCIS Immigrant Investor Program, also known as the Employment-Based Fifth Preference ("EB-5") Program.

    Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989-90 (1990) (codified at INA § 203(b)(5), 8 U.S.C. § 1153(b)(5)). Under the EB-5 Program, foreign investors have the opportunity to obtain U.S. lawful permanent resident status for themselves, their spouses, and their minor unmarried children by making a certain level of capital investment and associated job creation or preservation in the United States. In 1993, Congress announced a related pilot program – now known simply as the "Immigrant Investor Program" – that introduced the concept of the "regional center." Department of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1993. Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (1992). Regional centers were designed to pool investor money in a defined industry and promote economic growth in a specific geographic area.

16. When an immigrant seeks to become an immigrant investor, he embarks on a three-step process that includes: (1) filing a petition with USCIS, (2) NVC's processing of the immigrant investor visa application, and (3) the consular office's approval of the visa application.

17. An immigrant investor must file an initial immigrant petition and supporting documentation to receive EB-5 immigrant classification. 6 USCIS Policy Manual pt. G, ch. 4 (May 10, 2019) ("USCIS Policy Manual")[1].

18. The petition must establish he or she meets the following eligibility requirements when filing the Immigrant Petition by Alien Entrepreneur (Form I-526): the required amount of capital has been invested or is actively in the process of being invested in the new commercial enterprise; the investment capital was obtained by the investor through lawful means; the new commercial enterprise will create at least 10 full-time position for qualifying employees;

---

[1] The USCIS Policy Manual is the agency's centralized online repository for USCIS' immigration policies.

and the immigrant investor is or will be engaged in the management of the new commercial enterprise.

19. USCIS's approval of a petition establishes prima facie entitlement to legal immigration status in the U.S.

20. Once USCIS approves an I-526 Petition, USCIS forwards the petition to the DOS's NVC for the second step in the immigrant visa process. The approved I-526 petition and supporting documents are forwarded to the NVC, which performs all pre-interview functions. 8 CFR §§ 204.6(e).

21. Once the NVC completes processing the immigrant visa, it forwards the immigrant visa package to the appropriate consular post for consular review. The consular office is also part of the DOS. This is the third step in the immigrant visa process. The consular officers are responsible for the issuance of a visa. 6 U.S.C. § 236(b)-(c); 8 U.S.C. §§1104(a)(1), 1201(a).

22. The Department of State, its employees, and its subsidiaries, are required to process immigrant worker visas within a reasonable time period and are required by law to act upon visa applications. *See Patel,* 134 F.3d at 923.

23. The issuance or denial of an immigrant employment visa is the responsibility of consular officers.  8 U.S.C. § 1184; *See also Patel*, 134 F.3d at 933 ("[I]t is uncontested that only State Department consular officers have the power to issue visas."); *Raduga*, 440 F. Supp. 2d at 1145 (holding that "[a]ny delay in processing Plaintiff's visa applications is [] traceable solely to the consular officials").

24. The decision of whether to grant a visa petition requires non-discretionary determinations that require the application of law to factual determinations. An applicant's eligibility for a visa is based on three legal and regulatory criteria; if all three of the criteria are met, an

applicant is considered eligible for a visa. *See* 9 FAM 301.1-2. The three criteria require the applicant to: (1) fall within a visa classification, (2) provide a complete visa application and complete all required steps in the application process, and (3) demonstrate that he or she is not subject to any legal provision which would make him or her ineligible for a visa and therefore inadmissible into the United States. *Id.*

25. In general, a consular officer's actual decision, whether it is a grant or a denial of a visa, is not subject to judicial review. This is known as the "doctrine of consular nonreviewability." *See, e.g. Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999) ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review.") However, where a plaintiff challenges the authority of a consular officer to either take or fail to take an action, "as opposed to a decision taken within the counsel's discretion, jurisdiction exists." *Patel,* 134 F.3d at 931-32 (footnotes and citations omitted).

## FACTUAL ALLEGATIONS

26. The American Liberty Regional Center, LLC ("ALRC") was designated as a USCIS-approved Regional Center on March 11, 2013, with a geographic territory that includes Broward, Miami-Dade, and Palm Beach in the State of Florida.

27. ALRC is sponsoring the Campo Felice Project and has agreed to assume the duties inherent to the conduct of the Regional Center with regard to the Campo Felice Project, including various administrative, oversight, record keeping, and compliance functions.

28. The Campo Felice Project involves the renovation, build-out, and operations of 323-unit senior independent living facility known as Campo Felice Riverfront Senior Housing.

29. Each EB-5 investor will make a qualifying investment of $500,000 into a non-escrow account of Campo Felice EB-5 Fund LLC (the "Company"), and will become a Class B

      Member of the Company.  The Company will then loan the proceeds of the members' capital contributions to The MacFarlane Group (the "Developer"), which will be used to fund the development of the Project (the "EB-5 Loan").

30. The Company was formed on December 1, 2014 in the State of Florida. Because the company was formed after November 29, 1990, it qualifies as a new commercial enterprise pursuant to 8 C.F.R. § 204.6(e).

31. Plaintiff made a $500,000 capital contributions ("Subscription Amount") into the Company on April 3, 2015, when Plaintiff transferred $500,000 from Plaintiff's client trust account at PNC Bank to the non-escrow account of the Company. Funds transferred to Campo Felice EB-5 Fund LLC, by Plaintiff, are active and irrevocably committed.

32. On September 30, 2015, USCIS received Plaintiff's Form I-526, Immigrant Petition by Alien Entrepreneur.  Plaintiff's application included all initial evidence necessary to accompany an I-526 petition. 8 C.F.R. § 204.6(j). Specifically, Plaintiff's I-526 submission included a completed Form I-526, with appropriate filing fee of $1,500.00, 8 C.F.R. § 103.7(b)(1)(i)(W); a project memorandum; and a memorandum establishing the lawful source of capital invested by the Plaintiff and tracing the remittance of Plaintiff's capital to the Campo Felice EB-5 Fund, LLC account.

33. Plaintiff's I-526 petition was approved on February 9, 2017.

34. Plaintiff was interviewed at the U.S. Embassy in Kabul, Afghanistan on October 24, 2017.

35. At his interview, Plaintiff was provided with am immigrant visa refusal/collection card.  The consular officer requested additional evidence from Plaintiff, specifically: additional evidence on source of funding, amended passports for his children, translations for the Dari Tazkeras submitted, and police certificates from UAE for himself and his wife.

36. By November 13, 2017, all additional evidence requested from Plaintiff had been submitted to the consular officer.

37. Plaintiff and his representative have made innumerable inquiries into the status of his visa application since 2017. The following is a list of these inquiries:

   a. On November 30, 2017, Plaintiff submitted a first case status inquiry to the Kabul Immigrant Visa ("IV") Unit. On December 2, 2017, the IV unit requested police certificate from the UAE for Plaintiff and his wife, and informed Plaintiff that his case was in administrative processing.

   b. On March 26, 2018, Plaintiff submitted a second case status inquiry to the Kabul IV Unit and received no response.

   c. On May 24, 2018, Plaintiff submitted a third case status inquiry to the Kabul IV Unit. On May 28, 2018, the Kabul IV Unit responded that "[w]e have reviewed Department records and can confirm that your immigrant visa case was refused for administrative processing under 221(g) of the Immigration and Nationality Act (INA). We will notify you when this process has completed and the case is ready to move forward."

   d. On August 20, 2018, Plaintiff submitted a fourth case status inquiry to the Kabul IV Unit. On August 21, 2018, The Kabul IV Unit responded, informing Plaintiff that his case remained in administrative processing.

   e. On November 13, 2018, Plaintiff submitted a fifth case status inquiry to the Kabul IV Unit. On November 13, 2018, the Kabul IV Unit responded stating: "[p]lease note that Mr. Sultani's case has been reopened. Furthermore, according to our records, the case is still undergoing necessary administrative processing in order to verify his qualifications

for the visa. Please be assured that a notification will be sent as soon as the administrative processing required for this case has concluded."

    f. On February 12, 2019, Plaintiff submitted his latest case status inquiry to the Kabul IV Unit. On February 14, 2019, the Kabul IV Unit responded stating that: "[o]ur records indicate that this case is still undergoing necessary administrative processing in order to verify the applicant's qualifications for the visa."

38. Plaintiff's visa application has now been pending for more than 19 months and counting since the date of his immigrant visa interview on October 24, 2017.

## CLAIMS FOR RELIEF

### COUNT I
### 28 U.S.C. § 1361
### Writ of Mandamus to Compel Officers and Agencies of the United States to Perform a Duty Owed to Plaintiffs

39. All proceeding paragraphs are incorporated by reference as though fully set forth herein.

40. The INA and the regulations issued pursuant to it impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

41. Plaintiff has fully complied with all statutory and regulatory requirements for seeking an EB-5 visa for the Plaintiff and his family, including obtaining approval of an I-526 Petition and submitting all necessary documentation and paying all required fees.

42. Plaintiff has submitted multiple inquiries to the relevant DOS authorities, but Defendants have offered no explanation for their persistent delay and no indication whether a decision on the visa is imminent. Such a persistent and unexplained delay is unreasonable.

43. The Defendants have willfully and unreasonably failed to adjudicate Plaintiff's visa application and the approved petition for over 19 months, thereby depriving the Plaintiff of his rights under 8 U.S.C. § 1184 and the APA to have a properly filed visa application decided in a timely manner.

44. The Defendants owe the Plaintiff a duty to act upon his visa application. The Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law. Adjudication of the Plaintiff's visa application is a purely ministerial, non-discretionary act which the Defendants are under an obligation to perform in a timely manner; the Plaintiff has no alternative means to obtain adjudication of the requested visa; and his right to issuance of the writ is clear and undisputable. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35 (1980); *see also Patel,* 134 F.3d at 933 ("[W]e find that the consulate had a duty to act and that to date . . . the consulate has failed to act in accordance with that duty and that writ [of mandamus] should issue.") This Court should therefore issue a writ of mandamus directing the Defendants to render a decision either granting or denying the EB-5 visa.

45. The Defendants have failed to act within a reasonable period of time. The Plaintiff has waited over 19 months for administrative processing to be completed, without explanation from the consulate for the delay, which is inherently unreasonable. *See, e.g., Raduga*, 440 F. Supp. 2d at 1149 (finding consulate's four year delay unreasonable and issuing a writ of mandamus instructing consulate to either grant or deny Plaintiff's visa application within 60 days).

46. As all administrative remedies have now been exhausted, and Plaintiff is suffering a continuing harm due to Defendants' persistent delay, there exists no other adequate remedy than the filing of this mandamus complaint.

47. Based on the foregoing, Plaintiff is entitled to a writ of mandamus directing Defendants to issue the visa forthwith.

## COUNT II
### Administrative Procedure Act, 5 U.S.C. § 706(2):
### Arbitrary and Capricious Action

48. All preceding paragraphs are incorporated by reference as though fully set forth herein.

49. Plaintiff clearly qualifies for the visa classification sought, as can be evidence by an approved I-526 petition.

50. Plaintiff is not subject to any grounds of inadmissibility for the visa classification sought.

51. Plaintiff has no way to enter the U.S., because the Defendants have failed for nearly 19 months to adjudicate his employment based visa.

52. Defendants lack of action on Plaintiff's visa is arbitrary and capricious and not in accordance with law.

53. The Court should therefore remand with instructions to adjudicate the employment based visa promptly.

## **PRAYER FOR RELIEF**

The Plaintiff requests that the Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Compel the Defendants and those acting under them to perform their duty to adjudicate the EB-5 visa of Plaintiff without further delay;

C. Compel the Defendants and those acting under them to perform their duty to complete all background checks and other reviews of Plaintiff without further delay;

D. Award Plaintiff attorneys' fees, costs, and expenses, in conformity with the Equal Access to Justice, Act 5 U.S.C. § 504, 28 U.S.C. § 2412;

E. Maintain jurisdiction over this matter until Plaintiff is admitted to the United States on a EB-5 visa; and

F. Grant such other and further relief as this Court deems proper under the circumstances.

Dated: October 16, 2019                                      Respectfully submitted,

*/s/ Eric S. Montalvo*
Eric S. Montalvo
D.C Bar. 993206
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 808-3133
Facsimile: (888) 899-6053
EMontalvo@fedpractice.com

**Certificate of Service**

I hereby certify that on this 16th day of October 2019, I caused to be served by electronic filing a copy of "Complaint for Writ of Mandamus and Injunctive Relief". I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        Respectfully submitted,

                                        */s/ Eric S. Montalvo*
                                        Eric S. Montalvo
                                        D.C Bar. 993206
                                        FEDERAL PRACTICE GROUP
                                        1750 K Street, N.W., Suite 900
                                        Washington, D.C. 20006
                                        Telephone: (202) 808-3133
                                        Facsimile: (888) 899-6053
                                        EMontalvo@fedpractice.com